No. 22-3235

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

WANDREA RUSSO,
      Plaintiff-Appellant,

v.

THE BRYN MAWR TRUST COMPANY,
      Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

**BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFF-APPELLANT**

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

STEVEN WINKELMAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

STATEMENT OF INTEREST ................................................................. 1

STATEMENT OF ISSUES...................................................................... 1

STATEMENT OF THE CASE ................................................................ 2

    A.  Statement of Facts ....................................................... 2

    B.  District Court's Decision............................................. 6

ARGUMENT ........................................................................................... 7

I.  An unfulfilled threat can constitute a materially adverse action
for purposes of a retaliation claim under Title VII............................ 7

    A.  Under *Burlington Northern*, an unfulfilled threat is
materially adverse if it well might dissuade a reasonable
worker from engaging in protected activity................................ 8

    B.  The district court did not properly apply *Burlington
Northern* in assessing whether the threats Russo faced
were materially adverse. ........................................................12

    C.  Under the correct standard, a reasonable jury could find
that the threats Russo faced were materially adverse.............21

II.  A paid suspension, when based on race, should be actionable as
discrimination under Title VII.........................................................23

CONCLUSION ......................................................................................29

CERTIFICATE OF COMPLIANCE ......................................................31

CERTIFICATE OF SERVICE................................................................33

# TABLE OF AUTHORITIES

## Cases

*Billings v. Town of Grafton*,
   515 F.3d 39 (1st Cir. 2008) ................................................... 11

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006) ................................................... *passim*

*Canada v. Samuel Grossi & Sons, Inc.*,
   49 F.4th 340 (3d Cir. 2022) ................................................... 2

*Chambers v. District of Columbia*,
   35 F.4th 870 (D.C. Cir. 2022) (en banc) ....................................... 27, 28

*Clarkson v. SEPTA*,
   700 F. App'x 111 (3d Cir. 2017) ................................................ 20

*Cox v. Onondaga Cnty. Sheriff's Dep't*,
   760 F.3d 139 (2d Cir. 2014) ................................................... 11

*Davis v. Legal Servs. Ala., Inc.*,
   143 S. Ct. 560 (2023) (mem.) ................................................. 28

*Davis v. Legal Servs. Ala., Inc.*,
   19 F.4th 1261 (11th Cir. 2021) ............................................... 27-28

*Davis v. Se. Pa. Transp. Auth.*,
   2016 WL 97922 (E.D. Pa. Jan. 8, 2016) ......................................... 19

*EEOC v. PVNF, LLC*,
   487 F.3d 790 (10th Cir. 2007) ................................................ 16

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) ........................................................ 25

*Gratz v. Ruggiero*,
   822 F. App'x 78 (3d Cir. 2020) ............................................... 13

*Hernandez v. Wal-Mart*,
   844 F. App'x 598 (3d Cir. 2021) .............................................. 23

*Hudson v. Cheyney Univ. of Pa.*,
2018 WL 6603870 (E.D. Pa. Dec. 14, 2018) ........................................ 18

*In re Trib. Media Co.*,
902 F.3d 384 (3d Cir. 2018) ................................................................ 23

*Jones v. Se. Pa. Transp. Auth.*,
796 F.3d 323 (3d Cir. 2015) ........................................................ *passim*

*Killen v. Nw. Hum. Servs., Inc.*,
2007 WL 2684541 (E.D. Pa. Sept. 7, 2007) ........................................ 19

*Komis v. Sec'y of U.S. Dep't of Lab.*,
918 F.3d 289 (3d Cir. 2019) ................................................................ 15

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,
503 F.3d 217 (3d Cir. 2007) .................................................................. 7

*Lesiv v. Ill. Cent. R.R. Co.*,
39 F.4th 903 (7th Cir. 2022) ............................................................... 16

*Lockridge v. Univ. of Me. Sys.*,
597 F.3d 464 (1st Cir. 2010) .............................................................. 16

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986) ............................................................................. 25

*Monaghan v. Worldpay US, Inc.*,
955 F.3d 855 (11th Cir. 2020).................................................. 9, 10, 22

*Moore v. City of Phila.*,
461 F.3d 331 (3d Cir. 2006) .................................................................. 9

*Nolan v. Swartz Campbell, LLC*,
2008 WL 598291 (W.D. Pa. Feb. 29, 2008) ........................................ 19

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998) ............................................................................. 17

*Pantoja v. Am. NTN Bearing Mfg. Corp.*,
495 F.3d 840 (7th Cir. 2007)..................................................... 11-12, 18

*Planadeball v. Wyndham Vacation Resorts, Inc.*,
    793 F.3d 169 (1st Cir. 2015) ........................................................ 10, 22

*Poullard v. McDonald*,
    829 F.3d 844 (7th Cir. 2016) ................................................................ 12

*Pugni v. Reader's Dig. Ass'n, Inc.*,
    2007 WL 1087183 (S.D.N.Y. Apr. 9, 2007) ........................................ 19

*Raffaele v. Potter*,
    2012 WL 33035 (E.D. Pa. Jan. 6, 2012) ............................................ 18

*Remp v. Alcon Lab'ys, Inc.*,
    701 F. App'x 103 (3d Cir. 2017) .......................................................... 20

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
    743 F.3d 11 (2d Cir. 2014) ............................................................ 10, 22

*Robinson v. City of Pitt.*,
    120 F.3d 1286 (3d Cir. 1997) .............................................................. 15

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
    566 U.S. 560 (2012) ............................................................................ 25

*Thompson v. N. Am. Stainless, LP*,
    562 U.S. 170 (2011) ............................................................................ 18

*Threat v. City of Cleveland*,
    6 F.4th 672 (6th Cir. 2021) ............................................................ 26, 28

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) .................................................................. 11

*Wharton v. Gorman-Rupp Co.*,
    309 F. App'x 990 (6th Cir. 2009) ........................................................ 11

## Statutes

18 U.S.C. § 115 ...................................................................................... 13

18 U.S.C. § 1512 .................................................................................... 14

42 U.S.C. § 2000e ................................................................... 1

42 U.S.C. § 2000e-2 ...................................................... *passim*

42 U.S.C. § 2000e-3 ..................................................... 1, 7, 15

42 U.S.C. § 2000e-5 ................................................................ 3

## Rules

Fed. R. App. P. 29 ................................................................. 1

## Other Authorities

EEOC Compliance Manual § 8-II,
  2006 WL 4672793 (2006) ............................................... 14, 27

EEOC, *Enforcement Guidance on Retaliation and Related Issues*,
  No. 915.004, 2016 WL 4688886 (Aug. 25, 2016) .............................. 9-10

## STATEMENT OF INTEREST

Congress tasked the Equal Employment Opportunity Commission (EEOC) with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* This appeal presents important questions regarding the interpretation, application, and scope of Title VII's anti-discrimination and anti-retaliation provisions. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Because the EEOC has a substantial interest in the proper resolution of these questions, the agency offers its views. *See* Fed. R. App. P. 29(a)(2).

## STATEMENT OF ISSUES

1.    Whether an employer's unfulfilled threat can constitute a "materially adverse action" for purposes of a Title VII retaliation claim under the materiality standard set forth in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

2.    Whether a paid suspension, when based on race, should be actionable as discrimination under Title VII because suspending an employee inherently affects her terms, conditions, or privileges of employment.[1]

---

[1] The EEOC takes no position on any other issues in this appeal.

## STATEMENT OF THE CASE

### A.  Statement of Facts[2]

Wandrea Russo, who is African American, worked as a teller at The Bryn Mawr Trust Company (BMT). II.App.64 (¶¶ 1-4).[3] There, Russo's manager, Therese Trainer, routinely made racist remarks. For instance, Trainer stated that "black people don't know how to budget," that she was "so tired of black people complaining about slavery," and that "she was tired of Black people complaining and acting like victims." II.App.65-66 (¶¶ 12, 16), 68 (¶ 30). On one occasion, while Russo was helping a difficult customer, Trainer told Russo, "Wandrea, this is a little old white lady, and you're a big black woman. I'm sure she's much more scared of you than you are of her." II.App.67-68 (¶ 23).

In April 2018, Russo filed an administrative charge with the EEOC and the Pennsylvania Human Rights Commission, alleging

---

[2] Because this appeal involves a grant of summary judgment, the EEOC presents these facts in the light most favorable to Russo. *See Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022).

[3] Appendix references take the form "[volume number].App.[page number(s)]." References to materials outside the appendix take the form "R.[district court docket entry number] at [CM/ECF-assigned page number(s)]." Where appropriate, the original page, line, or paragraph numbers are provided parenthetically.

discrimination. II.App.65 (¶ 11); *see also* 42 U.S.C. § 2000e-5(b) (Title VII charge-filing provision). She also reported Trainer to BMT. II.App.68-70 (¶¶ 30, 35, 39, 43), 76-77 (¶¶ 92-94). The bank investigated Russo's complaints, but "concluded that discrimination or harassment had not occurred." II.App.78 (¶ 98). However, in June 2018, the same month BMT shared its findings, Trainer left and was replaced by another manager. II.App.78 (¶ 100), 80 (¶ 116).

Around the same time Russo filed her EEOC charge, BMT also began investigating her for allegedly mishandling bank keys and improperly securing a box containing vault combinations. II.App.72-74 (¶¶ 60-74). Shortly thereafter, in May 2018, BMT placed Russo on "paid administrative leave" while it completed its investigation. II.App.74 (¶¶ 75, 79). Ultimately, BMT could not corroborate the allegations against Russo and closed its investigation without taking any further disciplinary action. II.App.74-75 (¶¶ 75, 82); II.App.42 n.41.

When Russo returned from administrative leave in June 2018, she met with a BMT human resources representative, Jennifer Stryker. II.App.78 (¶ 101). During that meeting, Stryker informed Russo that a reporter had contacted the bank and planned to write a story about

Russo's EEOC charge. II.App.78 (¶ 103). Apparently believing that
Russo was responsible for the story, Stryker instructed Russo that she
"needed to reach out to [the reporter] immediately and tell him not to
run that article; that once [Russo] went down that road, there was no
turning back; [and] that it was going to be very bad for [Russo]."
III.App.591 (525:12-16); II.App.177 (¶ 24); *see also* R.30-3 at 46 (257:8-
16) (Russo testifying that Stryker "told me she was upset" about the
planned article, that "it wasn't good to do it," and that "it was going to
be very bad for me"); R.30-3 at 46 (257:20-21) (Russo testifying that
Styker told her "[y]ou need to call [the reporter] and you need to make
sure that this doesn't run"); R.30-3 at 46-47 (257:24-258:2) (Russo
testifying that Stryker said "[t]his is going to be very bad for you" and
"[y]ou better be careful before you go down this road").

Stryker also told Russo she was making a "mistake," and warned,
"[i]t's not going to be very easy to get a job with your name, you know,
out there that you're making these kind of claims." III.App.591 (525:20-
22). After Russo responded that she did not have a problem with the
article, Styker announced that she was going to leave the room, wrote
the reporter's name and telephone number on a note, handed the note

to Russo, and left with an implied ultimatum: "I'm going to allow you to think about it and what I suggest is you get on the phone and you call [the reporter] and tell him not to run that article." III.App.592 (526:5-8); *see also* R.30-3 at 47 (258:3-7). At some point during this exchange, Stryker added, "[y]ou better call him." R.30-3 at 47 (258:6).

In the end, Russo did contact the reporter. Instead of discouraging him from pursuing the story, though, Russo gave an interview, and the newspaper ran an article about her complaints. II.App.79 (¶¶ 108, 110).

Less than a year later, in May 2019, Russo reported another incident to BMT when a bank customer she was helping made a series of racist and inappropriate comments. II.App.82-83 (¶¶ 127-34). BMT again investigated the incident, and the customer confirmed Russo's account. II.App.83 (¶ 138). As a result, BMT informed Russo that it planned to "de-market" the customer, giving them thirty days to find and transfer their funds to a new institution, and that Russo did not need to assist the customer if they returned. II.App.84-85 (¶¶ 139, 145). Believing that BMT's response was inadequate, Russo resigned. II.App.85 (¶¶ 146-47).

## B.  District Court's Decision

Russo filed this action, asserting claims for race discrimination and retaliation under Title VII (among other claims). II.App.112-114 (¶¶ 51-61). After discovery, the district court granted summary judgment to BMT on all of Russo's claims. I.App.26-27.

As relevant here, the district court held that Russo's retaliation claim premised on Stryker's threats failed as a matter of law because unfulfilled threats categorically are not materially adverse. I.App.19. The court reasoned that "[w]ords alone, even when harsh, do not constitute an adverse action if they are unaccompanied by follow up discipline or other negative action." I.App.19 (quotation marks omitted). The court further found that "Russo ha[d] not shown that [BMT] acted unfavorably toward her in any way after this meeting [with Stryker] or that this alleged threat had any impact on her employment." I.App.19. Accordingly, the court concluded, the threats Russo faced were "not a materially adverse action for purposes of a retaliation claim." I.App.19.

The district court also held that Russo's discrimination claim premised on her paid administrative leave failed as a matter of law because, under this Court's decision in *Jones v. Southeastern*

*Pennsylvania Transportation Authority*, 796 F.3d 323 (3d Cir. 2015), a

paid suspension pending an investigation of misconduct does not count

as an adverse employment action for purposes of a discrimination claim.

I.App.10-12.

This appeal followed. I.App.28.

## ARGUMENT

## I.    An unfulfilled threat can constitute a materially adverse action for purposes of a retaliation claim under Title VII.

Title VII prohibits employers from retaliating against employees

who engage in activity protected by the statute—which includes filing a

charge of discrimination. 42 U.S.C. § 2000e-3(a). To prevail on a

retaliation claim, a plaintiff must show that: "(1) she engaged in

protected activity, (2) the employer took a materially adverse action

against her, and (3) there was a causal connection between the

protected activity and the employer's action." *LeBoon v. Lancaster*

*Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007).

Here, the district court determined that Russo's retaliation claim

premised on workplace threats failed as a matter of law because

unfulfilled threats categorially are not materially adverse. In other

words, according to the district court, a threat cannot be materially

adverse unless an employer acts on it. But the district court did not

properly apply—and its holding is contrary to—the Supreme Court's

decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548

U.S. 53 (2006), which established the material adversity standard for

Title VII retaliation claims. Under that standard, an unfulfilled threat,

like any other retaliatory conduct, is materially adverse if it "well might

have dissuaded a reasonable worker from making or supporting a

charge of discrimination." *Id.* at 68 (cleaned up). Applying that standard

here—and viewing the facts in the light most favorable to Russo—a

reasonable jury could find that the threats Russo faced were materially

adverse.

For these reasons, the district court's grant of summary judgment

on Russo's retaliatory threat claim should be reversed and the case

remanded for further appropriate proceedings.

### A. Under *Burlington Northern*, an unfulfilled threat is materially adverse if it well might dissuade a reasonable worker from engaging in protected activity.

In *Burlington Northern*, the Supreme Court held that an action is

materially adverse for purposes of a Title VII retaliation claim if "it well

might have dissuaded a reasonable worker from making or supporting a

charge of discrimination." 548 U.S. at 68 (cleaned up). Accordingly, to survive summary judgment on the issue of material adversity, a plaintiff need only show that "[a] reasonable jury could conclude that [her employer] took actions against [her] that might well dissuade a reasonable worker from filing or supporting a charge of discrimination." *Moore v. City of Phila.*, 461 F.3d 331, 346 (3d Cir. 2006) (reversing district court's grant of summary judgment to employer on retaliation claim).

The *Burlington Northern* standard applies with equal force to retaliatory threats. As the Eleventh Circuit has explained, in determining whether an employer's threats are actionable as retaliation, courts must apply "the standard applicable to *all* Title VII retaliation claims," that is, "the *Burlington Northern* 'well might have dissuaded' standard." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020) (emphasis added). EEOC guidance likewise provides that "adverse actions may include work-related threats … that in the circumstances might well dissuade a reasonable person from engaging in protected activity." EEOC, *Enforcement Guidance on*

*Retaliation and Related Issues*, No. 915.004, 2016 WL 4688886, at *17 & n.110 (Aug. 25, 2016).

Applying *Burlington Northern*, multiple courts of appeals have held that under at least some circumstances, an employer's threats alone could dissuade a reasonable worker from engaging in protected activity. Several circuits, for instance, have held that threatening to fire an employee could have this effect. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d Cir. 2014) (reasonable jury "could find both that [employer] threatened [employee] with the loss of his job, and that this threat would dissuade a reasonable worker from making or supporting a charge of discrimination") (cleaned up); *Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 178 (1st Cir. 2015) (employer's "multiple threats to fire" employee "could dissuade a reasonable employee from making or supporting a charge of discrimination"); *Monaghan*, 955 F.3d at 863 (threats of "termination and possible physical harm" could dissuade reasonable worker from making or supporting a charge of discrimination).

Courts have similarly recognized that threatening an employee with disciplinary action, negative performance evaluations, physical

harm, or other negative consequences could dissuade a reasonable

worker from engaging in protected activity under some circumstances.

*See Billings v. Town of Grafton*, 515 F.3d 39, 54-55 (1st Cir. 2008) ("An

employee who knows that, by [making a charge of discrimination], she

risks ... a threat of further, more serious discipline ... might well choose

not to proceed with the litigation in the first place.") (quotation marks

omitted); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 92 (2d

Cir. 2015) ("[T]he threat of a negative evaluation ... might dissuade a

reasonable worker from making or supporting a charge of

discrimination.") (quotation marks omitted); *Wharton v. Gorman-Rupp

Co.*, 309 F. App'x 990, 998 (6th Cir. 2009) ("Threatening behavior by a

vice-president of human resources toward a subordinate employee in

the company parking lot, where that employee reasonably feels that

violence is a real possibility, is likely to dissuade any reasonable worker

from making or supporting a charge of discrimination...."); *Cox v.

Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 148 (2d Cir. 2014) ("[T]he

threat of false reports charges ... would often—even usually—be a

deterrent to reasonable employees making or supporting discrimination

claims."); *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849

(7th Cir. 2007) (factfinder could conclude that threats of disciplinary action "on their own" were materially adverse for purposes of retaliation claim); *but see Poullard v. McDonald*, 829 F.3d 844, 856-57 & n.3 (7th Cir. 2016) (holding that employer's "threats of unspecified disciplinary action do not constitute adverse actions, at least not in this context," but noting that "we have left open 'the possibility that a plaintiff could argue that a singular threat of termination had the impact of dissuading a reasonable worker from supporting a discrimination complaint'") (citation omitted).

> **B.    The district court did not properly apply *Burlington Northern* in assessing whether the threats Russo faced were materially adverse.**

Here, although the district court cited *Burlington Northern*'s material adversity standard, I.App.16, it did not assess whether the threats Russo faced might have dissuaded a reasonable worker from engaging in protected activity. Instead, the court held that threats categorically cannot be materially adverse unless they are accompanied by "follow up discipline or other negative action" or have an "impact on [a plaintiff's] employment." I.App.19. In other words, according to the

district court, a threat cannot be materially adverse unless an employer acts on it.

There are at least three problems with that reasoning. First, it is inconsistent with *Burlington Northern* and contrary to the weight of authority canvassed above. *Supra* at 8-12. As those decisions demonstrate, an employer's threats are materially adverse and actionable as retaliation *whether or not the employer acts on them* so long as they might dissuade a reasonable worker from engaging in protected activity.

That outcome makes sense because threats are, nearly by definition, often intended to intimidate a person to deter behavior or compel compliance. As this Court has explained in other contexts, "[a] threat is an expression of intention to do harm," and when used to intimidate, threats are meant to "*discourage* someone" from doing something. *Gratz v. Ruggiero*, 822 F. App'x 78, 84 (3d Cir. 2020) (cleaned up) (emphasis added). The federal criminal code is likewise replete with laws recognizing and prohibiting threats of this nature. *See, e.g.*, 18 U.S.C. § 115(a)(1) (crime to threaten federal official "with intent to impede, intimidate, or interfere with such official"); *id.*

13

§ 1512(a)(2)(A) (crime to threaten witness "with intent to … influence, delay, or prevent [their] testimony").

So understood, the fact that a threat goes unfulfilled does not necessarily diminish its power to intimidate. Quite the opposite, in the employment context, an employer may be less likely to act on a threat that has its desired effect: dissuading an employee from complaining about discrimination. It would therefore be anomalous to require a plaintiff to show that her employer followed through with its threatened "discipline or other negative action," I.App.19, to show that the threats were materially adverse. *Cf.* EEOC Compliance Manual § 8-II(E)(1), 2006 WL 4672793, at n.45 (2006) ("[A]n interpretation of [the statute] that permits proven retaliation to go unpunished undermines the purpose of the anti-retaliation provisions of maintaining unfettered access to the statutory remedial mechanism.").

The second problem with the district court's reasoning is that it revives pre-*Burlington Northern* standards by requiring a plaintiff to show that the threats she confronted had an "impact on her employment." I.App.19. Before *Burlington Northern*, some courts— including this Court—held that retaliatory conduct is materially

adverse only if it affects the "terms" or "conditions" of employment. *See, e.g.*, *Robinson v. City of Pitt.*, 120 F.3d 1286, 1300 (3d Cir. 1997). But *Burlington Northern* expressly abrogated those holdings.

In *Burlington Northern*, the Supreme Court clarified that, unlike Title VII's anti-discrimination provision, the anti-retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. at 64; *see also Komis v. Sec'y of U.S. Dep't of Lab.*, 918 F.3d 289, 293 (3d Cir. 2019) (same). After all, while the anti-discrimination provision prohibits discrimination "with respect to … compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), the anti-retaliation provision contains no such qualification, *id.* § 2000e-3(a).

The Court found "strong reason to believe" that Congress intentionally drew this "important" textual distinction to further Title VII's aims. *Burlington N.*, 548 U.S. at 61, 63. As the Court reasoned, because "Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses, … [i]nterpreting the antiretaliation provision to provide broad protection from retaliation helps ensure the cooperation upon

which accomplishment of [Title VII's] primary objective depends." *Id.* at 67; *see id.* at 66 (rejecting the view that "it is 'anomalous' to read [Title VII] to provide broader protection for victims of retaliation than for … [discrimination] victims"). Simply put, an employee need not show that an employer's threats—or any other form of retaliation—impacted her employment to show material adversity. *Cf. EEOC v. PVNF, LLC*, 487 F.3d 790, 803 n.8 (10th Cir. 2007).

The third problem with the district court's decision is that it effectively imposes a categorical rule that unfulfilled threats are *never* materially adverse. As the Seventh Circuit recently observed, "[t]he Supreme Court has cautioned against categorical rules for retaliation claims." *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 913 (7th Cir. 2022); *see also Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 472 (1st Cir. 2010) ("After *Burlington Northern*, employment actions are less susceptible to categorical treatment when it comes to the question of whether they are or are not materially adverse.").

In *Burlington Northern*, the Supreme Court made clear that "the significance of any given act of retaliation will often depend upon the particular circumstances." 548 U.S. at 69. "The real social impact of

workplace behavior," the Court explained, "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998)). More simply, "[c]ontext matters." *Id.* For example, a "change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Id.* Similarly, while "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight," "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id.*

Given this context-driven inquiry, the Court concluded, "a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an 'act that would be immaterial in some situations is material in others.'" *Id.* (citation omitted). In a later decision, the Court again eschewed categorical rules, saying that, "[g]iven the broad statutory text and the variety of workplace contexts

in which retaliation may occur, Title VII's antiretaliation provision is simply not reducible to a comprehensive set of clear rules." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 175 (2011). Had the district court heeded that guidance, it would have declined to rule categorically that unfulfilled threats cannot be materially adverse. *See Pantoja*, 495 F.3d at 849 (given *Burlington Northern*'s "context-driven inquiry," "we have declined to rule categorically that [disciplinary] warnings cannot be adverse actions").

The lower court decisions on which the district court relied do not compel a different result. I.App.19. Putting aside the fact that those decisions do not bind this Court, at least one applied caselaw that *Burlington Northern* had abrogated. *See Hudson v. Cheyney Univ. of Pa.*, 2018 WL 6603870, at *7 (E.D. Pa. Dec. 14, 2018) (relying on pre-*Burlington Northern* precedent holding that materially adverse action must affect terms and conditions of employment). The rest involved factually distinguishable conduct, and their cursory analyses lend little credence to the district court's reasoning. *See Raffaele v. Potter*, 2012 WL 33035, at *7-9 (E.D. Pa. Jan. 6, 2012) (supervisor's comment that employee "did not know who he was dealing with" neither qualified as a

threat nor could dissuade a reasonable worker from engaging in protected activity); *Nolan v. Swartz Campbell, LLC*, 2008 WL 598291, at *5, *20 (W.D. Pa. Feb. 29, 2008) (employer's comment that "if he were [plaintiff], he would have quit" was not materially adverse) (alteration in original); *Pugni v. Reader's Dig. Ass'n, Inc.*, 2007 WL 1087183, at *23 (S.D.N.Y. Apr. 9, 2007) (employer's comment that plaintiff's days were "numbered" was not materially adverse).

Moreover, other district court decisions within this Circuit have reached the opposite conclusion, holding that unfulfilled threats *can* constitute materially adverse actions. *See, e.g.*, *Davis v. Se. Pa. Transp. Auth.*, 2016 WL 97922, at *15 (E.D. Pa. Jan. 8, 2016) (rejecting employer's argument that an "unfulfilled threat does not, as a matter of law, constitute an adverse employment action" and holding that supervisor's "alleged threat that Plaintiff would be 'bounced' from the Unit if she did not 'get along' with an employee against whom she had previously filed a complaint" could dissuade reasonable worker from engaging in protected activity); *Killen v. Nw. Hum. Servs., Inc.*, 2007 WL 2684541, at *7 (E.D. Pa. Sept. 7, 2007) ("[T]he threat of placement on administrative leave and the threat of a formal audit could have

dissuaded a reasonable employee from making a discrimination claim.").

Finally, the district court cited no Third Circuit precedent for the specific proposition that unfulfilled threats cannot be materially adverse. Nor could it have done so because this Court's published post-*Burlington Northern* decisions do not appear to squarely address whether or when an unfulfilled threat, standing alone, may be materially adverse for purposes of a retaliation claim. In at least two unpublished decisions, this Court concluded that unfulfilled threats were not actionable as retaliation. *See Remp v. Alcon Lab'ys, Inc.*, 701 F. App'x 103, 108 (3d Cir. 2017) (employer's "hollow threats" to discipline employee were not materially adverse); *Clarkson v. SEPTA*, 700 F. App'x 111, 115 (3d Cir. 2017) (employer's "sporadic threats of termination" did not "rise to the level of a materially adverse employment action"). But aside from lacking precedential value, neither *Remp* nor *Clarkson* explained why an unfulfilled threat could not dissuade a reasonable worker from making or supporting a claim of discrimination. As explained above, there is ample reason to believe it could under some circumstances.

For these reasons, the EEOC urges this Court to make clear that an employer's threats, even if unfulfilled, are materially adverse for the purposes of a retaliation claim if they might dissuade a reasonable worker from making or supporting a claim of discrimination.

### C. Under the correct standard, a reasonable jury could find that the threats Russo faced were materially adverse.

Under the proper standard—the *Burlington Northern* standard—the analysis in this case is straightforward.

While discussing Russo's EEOC charge, Stryker warned that it was "not going to be very easy to get a job with [her] name … making these kind of claims," III.App.591 (525:12-22), and that "it was going to be very bad for [Russo]" if her complaints became public, II.App.177 (¶ 24), suggesting that Russo might soon be out of a job and that BMT would not support (or perhaps even undermine) her efforts to find new employment. These warnings also came on the heels of Russo's nearly month-long suspension, II.App.105 (¶ 34), giving her little reason to believe they were mere idle talk. Viewing these facts in the light most favorable to Russo, a reasonable jury "could find both that [Stryker] threatened [Russo] with the loss of h[er] job, and that this threat would 'dissuade[ ] a reasonable worker from making or supporting a charge of

discrimination.'" *Rivera*, 743 F.3d at 26 (quoting *Burlinton N.*, 548 U.S. at 68); *see also Planadeball*, 793 F.3d at 178 (threats of termination could dissuade reasonable worker from engaging in protected activity); *Monaghan*, 955 F.3d at 863 (similar).[4]

In short, under the correct standard, a reasonable jury could find that the threats Russo faced were materially adverse. Because BMT did not challenge Russo's retaliatory threat claim on any other grounds,[5] the district court's grant of summary judgment on that claim should be reversed and the case remanded for further appropriate proceedings.

---

[4] Even if these threats did not actually dissuade Russo from pursuing her complaints, that fact would not change the result. The *Burlington Northern* standard asks only whether an employer's actions "well might have dissuaded a *reasonable* worker from making or supporting a charge of discrimination," 548 U.S. at 68 (emphasis added), not whether an employee was subjectively dissuaded from doing so. As the Court explained: "We refer to reactions of a *reasonable* employee because we believe that the [anti-retaliation] provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* at 68-69.

[5] In its reply brief below, BMT suggested in passing that Stryker's threats preceded Russo's protected activity, thereby defeating any causal inference. R.32 at 12. But Russo filed her initial EEOC charge in April 2018, while her conversation with Stryker took place in June 2018. At least part of Russo's protected activity thus plainly occurred beforehand.

## II.   A paid suspension, when based on race, should be actionable as discrimination under Title VII.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination, a plaintiff must prove: "(1) she belongs to a protected class, (2) she was qualified for the position she occupied, and (3) she was subject to an adverse employment action (4) under circumstances that give rise to an inference of unlawful discrimination." *Hernandez v. Wal-Mart*, 844 F. App'x 598, 600 (3d Cir. 2021) (citing *In re Trib. Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018)).

Here, Russo contends, among other things, that BMT discriminated by placing her on paid administrative leave pending its investigation of her alleged violations of the bank's security protocols. The district court held that Russo's discrimination claim premised on that conduct failed as a matter of law solely on the ground that a paid

suspension is not an adverse employment action. I.App.10-12.[6] The

district court relied on this Court's decision in *Jones v. Southeastern*

*Pennsylvania Transportation Authority*, 796 F.3d 323 (3d Cir. 2015),

which held that "[a] paid suspension pending an investigation of an

employee's alleged wrongdoing does not fall under any of the forms of

adverse action mentioned by Title VII's substantive provision." *Id.* at

326. For that reason, *Jones* concluded, "a suspension with pay, 'without

more,' is not an adverse employment action" for purposes of a

discrimination claim. *Id.* (citation omitted). Having determined that

Russo's paid suspension was not an adverse action, the district court did

not address whether race played any role in BMT's decision.

As published precedent, *Jones* is binding on this Court and thus,

for now, would foreclose Russo's discrimination claim if it were

premised solely on the fact of a paid suspension, "without more."[7]

---

[6] Separately, the district court assumed without deciding that Russo's paid suspension could serve as a materially adverse action for purposes of her retaliation claim. I.App.18 & n.5.

[7] In her opening brief on appeal, Russo contends that her paid suspension qualified as an adverse employment action under existing precedent because it involved the "something more" that *Jones* required. Appellant Br. at 17. The EEOC takes no position on that question.

24

Nonetheless, *Jones* was wrongly decided and contrary to Title VII's text. Under a straightforward reading of the relevant statutory language, a paid suspension is—or should be—actionable as discrimination if it is based on race.

Title VII prohibits discrimination with respect to the "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Congress did not define that phrase, and when terms go "undefined in a statute," courts give them their "ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). At a minimum, the Supreme Court has said, "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment … in employment," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (citation omitted), and therefore "is not limited to 'economic' or 'tangible' discrimination," and "it covers more than 'terms' and 'conditions' in the narrow contractual sense," *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (citations and quotation marks omitted).

As the Solicitor General has recently argued, "[p]lacing an employee on a paid suspension—removing him from the workplace and

prohibiting him from performing his regular work assignments—plainly affects the employee's 'terms' or 'conditions' of employment as those words are ordinarily understood." Br. for the United States as Amicus Curiae at 7, *Davis v. Legal Servs. Ala., Inc.*, No. 22-231 (U.S. May 18, 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). "[W]hether paid or unpaid, a work suspension upends the most fundamental requirement of employment: that an employee report to the workplace to complete job-related tasks." *Id.* at 8. "The 'when,' 'where,' and 'what' of a job—when the employee is required to work, at what location, and the position he is assigned and tasks he is required to perform with other employees— are all affected by a suspension and fall squarely within the 'terms' and 'conditions' of employment." *Id.*; *see also Threat v. City of Cleveland*, 6 F.4th 672, 677 (6th Cir. 2021).

In reaching a contrary result, *Jones* reasoned that placing an employee on a paid suspension pending an investigation of alleged misconduct does not "effect a 'serious and tangible' alteration of the 'terms, conditions, or privileges of employment,' because 'the terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies *in*

*appropriate circumstances.*'" 796 F.3d at 326 (emphasis added) (citations omitted).

But that logic simply assumes that an employer's reasons for suspending an employee were legitimate and non-discriminatory. The relevant question is whether an employer discriminates with respect to the terms, conditions, or privileges of employment when it places an employee on a paid suspension "because of [the employee's] race." 42 U.S.C. § 2000e-2(a)(1). "[T]he answer provided by the straightforward meaning of the statute is an emphatic yes." *Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) (en banc) (addressing race-based transfers); *see also* EEOC Compliance Manual § 15-VII(B)(7), 2006 WL 4673430 (2006) ("[R]ules and policies regarding discipline … must be enforced in an evenhanded manner, without regard to race.").

To be sure, this Court is not alone in holding that a paid suspension is not an adverse employment action. As *Jones* observed, "other courts of appeals have unanimously concluded that 'placing an employee on paid administrative leave where there is no presumption of termination' is not an adverse employment action under the substantive provision of Title VII." 796 F.3d at 326 (collecting cases); *see also Davis*

*v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) ("No Circuit has held that a simple paid suspension, in and of itself, constitutes an adverse employment action."), *petition for cert. filed* (U.S. Sept. 8, 2022) (No. 22-231).

But cracks are beginning to show in the atextual foundations underpinning those decisions. *See, e.g.*, *Chambers*, 35 F.4th at 874-75 (holding that discriminatory lateral job transfers are actionable under Title VII without showing of "objectively tangible harm" and overruling prior circuit precedent to the contrary); *Threat*, 6 F.4th at 677-80 (holding that discriminatory shift changes are actionable under Title VII, even when unaccompanied by a reduction in pay or benefits). Indeed, earlier this year, the Supreme Court asked for the government's views on whether to grant certiorari in a case presenting precisely the same question at issue here: whether placing an employee on a paid suspension because of their race is actionable as discrimination under Title VII. *See Davis v. Legal Servs. Ala., Inc.*, 143 S. Ct. 560 (2023) (mem.); Pet. for a Writ of Cert. at 7-20, *Davis v. Legal Servs. Ala., Inc.*, No. 22-231, 2022 WL 4236675 (U.S. Sept. 8, 2022). In response, the Solicitor General has encouraged the Supreme Court to grant certiorari

on that question and, as noted above, taken the position that Title VII's anti-discrimination protections reach paid suspensions. *Supra* at 25-26.

Accordingly, the EEOC invites this Court to revisit *Jones* at the appropriate time, and to make clear that a paid suspension is actionable as discrimination if it is based on race. If this Court were to hold that a paid suspension can be actionable as discrimination, the remaining inquiry here would be whether race motivated BMT's decision to place Russo on paid administrative leave. The EEOC takes no position on the ultimate resolution of that question.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment on Russo's retaliatory threat claim should be reversed, and the case remanded for further appropriate proceedings.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

May 19, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to 3d Cir. L.A.R. 28.3(d) & 46.1(e), I certify that, as an attorney representing an agency of the United States, I am not required to be admitted to the bar of this Court. *See* 3d Cir. L.A.R. 28.3, comm. cmt. I also certify that all other attorneys whose names appear on this brief likewise represent an agency of the United States and are also not required to be admitted to the bar of this Court. *See id.*

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 5,613 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(f) and 3d Cir. L.A.R. 29.1(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century 14 point.

Pursuant to 3d Cir. L.A.R. 31.1(c), I certify that the text of the electronically filed version of this brief is identical to the text of the hard copies of the brief that will be filed with the Court. I further certify pursuant to 3d Cir. L.A.R. 31.1(c) that, prior to electronic filing with

this Court, I performed a virus check on the electronic version of this

brief using Microsoft Windows Defender, and that no virus was

detected.

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney

May 19, 2023

## CERTIFICATE OF SERVICE

I certify that on May 19, 2023, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney

May 19, 2023