# United States Court of Appeals

*for the*

# Third Circuit

Case No. 22-3235

WANDREA RUSSO,

*Plaintiff-Appellant,*

– v. –

THE BRYN MAWR TRUST COMPANY.

*Defendant-Appellee*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA IN CASE NO. 2-19-CV-02408

## REPLY BRIEF ON BEHALF OF PLAINTIFF-APPELLANT

MARK D. SCHWARTZ
*Attorney for Plaintiff-Appellant*
P.O. Box 330
Bryn Mawr, Pennsylvania 19020
(610) 525-5534
markschwartz6814@gmail.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

I.    STATEMENT OF THE CASE'S PROCEDURAL
      BACKGROUND ........................................................................1

II.   ARGUMENT..................................................................................1

      A.    Reply to Appellee's Summary of Argument........................1

      B.    Reply to Appellee's Argument about Compliance with Rule
            of Appellate Procedure 28(a)(6)..........................................2

      C.    Reply to Appellee's Statement of the Case..........................2

      D.    Reply to Appellee's Summary of Argument........................3

      E.    Reply to Appellee's Further Argument................................6

III.  CONCLUSION............................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Burlington Northern & Santa Fe Railway Co., v. White*,
 548 U.S. 53 (2006).............................................................. 4, 5, 8, 9, 10

*Jones v. Southeastern Pennsylvania Transportation Authority*,
 796 F.3d 323 (3d Cir. 2015) ...................................................... 5, 6, 7, 9

**Statutes & Other Authorities:**

FRAP 28(a)(6)............................................................................................2

**PLAINTIFF'S/APPELLANT'S  REPLY BRIEF**

## I.    STATEMENT OF THE CASE'S PROCEDURAL BACKGROUND

This statement supplements that previously filed in Plaintiff-Appellant Wandrea Russo's Brief, filed in this matter on May 12, 2023.

The Equal Employment Opportunity Commission filed an Amicus Curiae Brief in Support of Plaintiff-Appellant on May 19, 2023

In response to Appellant's and the EEOC Briefs, Appellee, The Bryn Mawr Trust Company filed its Brief on June 9, 2023.

Now, Plaintiff-Appellant herewith files her Reply Brief.

**Note that reference to particular page numbers of other briefs herein are to their original page numbers, not the number assigned by the Court's docket numbering system.**

## II.    ARGUMENT

### A. Reply to Appellee's Summary of Argument

Normally, a brief and its response serve to narrow issues. As written, Appellee's Brief resorts to obfuscation, and at times misrepresentation, which prompt a necessary response by Appellant. This response is not only as to Appellee's unfounded criticism concerning Appellant's Brief, but also with respect to Appellee's criticism of the Amicus Brief filed by the U.S. Equal  Employment Opportunity Commission.

**B. Reply to Appellee's Argument about Compliance with Rule of Appellate Procedure 28 (a) (6)**

At footnote 2 of its Brief (Appellee's Brief, page 1), Appellee claims that Appellant violated Rule of Appellate Procedure 28(a)(6) by not including a statement of facts in her Statement of the Case. There is no issue with Appellant's brief, as per FRAP 28(a)(6) the Statement of the Case includes the combined procedural history, relevant facts, and citation to the record. Appellant's reliance on the factual statements and citation to the record was sufficient. Further, if there had been an issue, clearly the undersigned would have heard from Court administration in rejecting Appellant's filing.

**C. Reply to Appellee's Statement of the Case**

Over and over, Appellee quotes and takes out of context Appellant's deposition testimony about not being able to take it any longer at the Bank, meeting with her lawyer and allegedly planning her exit strategy. (Appellee's Brief, page 1) As admitted by Appellee, the period that this was purportedly to take place, even if there were such a plan, had expired with Appellant's remaining in the employ of Appellee. The Court can rest assured that a racist customer and Appellee's inadequate response were not part of any planned exit strategy executed by Appellant and her counsel. Rather Appellant's constructive discharge was the result of the continuing racist strategy employed by Appellee to get Appellant tripped up and fired, all as testified to by Appellant. (Appellant's Brief, page 22) What

2

necessitated Appellant's resignation was nothing of her or her lawyer's making and something never envisioned by them.

The remainder of Appellee's "Statement of the Case", except for its one-sided narrative with respect to that racist customer and Appellee's response, (Appellee's Brief, page 7) is a hodge podge, really not responsive to Appellant's Brief.

Again, as set forth in Appellant's Brief, while it may have been Appellee's "standard policy" to give demarketed customers 30 days to find a new bank, Appellant was not concerned with "standard policy", but rather Appellee's racially motivated lack of concern for her safety and its limited response given Appellant's past expressed concerns over race and the prior need for her to state " I am not a dog. I'm a human being." Appellant made her complaints to an HR Department that justified every indignity and laughed at her.   (Appellant's Brief, pages 9 and 10) This is what forced her resignation.  (See reference to Appellant's Statement of Facts and her own Statement of Disputed Facts at  Appellant's Brief, page 9 ) The forced resignation came consistent with Appellant's testimony of her conviction that Appellee was looking for an excuse to fire her.  (Appellant's Brief, pages 9 and 10)

### D. Reply to Appellee's Summary of Argument

Appellee knows full well how Appellant invoked, utilized, and applied the words "civility code" in an  ordinarily understood behavioral sense, requiring a certain normative standard of conduct.  Certainly the Civil Rights laws, consistent

with their very name, do impose a certain civil behavior when it comes to making discrimination uncivil. Appellant understands that mere impoliteness is insufficient, as courts have decided.

Next, Appellee disputes whether Appellant "voluntarily resigned," which is something that should have been allowed to be decided by a jury. Simply stated, the wildly different statements of fact pertaining to whether Appellant's was a resignation or constructive discharge, should have compelled the Court below to submit that issue to a jury for its determination.

When it came to the both the EEOC's Amicus Brief and Appellant's Brief, neither party was advocating anything revolutionary or inconsistent with stare decisis. Both briefs were relying on precedent, simply emphasizing that the decision of the Court below did not comply with the dictates of *Burlington Northern & Santa Fe Railway Co., v. White, 548 U.S. 53 (2006)*, as well as the decisions of multiple courts of appeal. Further, the EEOC states that "other district court decisions **within this Circuit** have reached the opposite conclusion, holding that unfulfilled threats can constitute materially adverse actions." (EEOC Brief, page 19) **(Emphasis added)**

Of course, all parties must recognize that the law evolves. In conjunction with that evolution, the EEOC and Appellant simply were pointing out that there is a current Supreme Court focus on this question of whether a suspension with pay

can constitute an adverse job action.  Further, as this question is under consideration, the EEOC stressed that "cracks are beginning to show in the textual foundations underpinning those decisions" holding that suspension with pay is not adverse, citing a number of cases. (EEOC Brief at page 28 ) Moreover, both Appellant and the EEOC emphasized the important qualifier under *Jones v. Southeastern Pennsylvania Transportation Authority*, 796 F.3d, 323 (3d Cir. 2015) " without more", denoting flexibility as opposed to some hard and fast rule. Appellant demonstrated, that in fact, there was "more". (Appellant Brief, pages 16 and 17)

Appellee claims that Appellant in her opening brief did not bring up the argument that the EEOC advances; namely that an unfulfilled threat constitutes something materially adverse. This issue is addressed in Appellant's Brief under the heading entitled "Retaliation."  (Appellant's Brief, pages 19 through 23) Factual reference is made specifically to the threats of HR with respect to speaking to a journalist, as well as other factual incidents that Appellant considered to be discriminatory. (Appellant's Brief, pages 21 and 22)  "Appellant was emphatic that the Bank was consistently trying to get her tripped up and fired…….. Moreover,, Appellant testified that as a result of going to HR she was threatened, called a liar, and retaliated against." (Appellant's Brief , page 22)  Indeed, Appellant relied on the *Burlington Northern* standard  when it came to the threats of retaliation which she faced.

5

Moreover, Appellee mischaracterizes the EEOC's Brief, claiming that it asserted no position on unfulfilled threats being materially adverse. To the contrary, there is the portion of the EEOC's Brief's headed: "C. Under the correct standard, a reasonable jury could find that the threats Russo faced were materially adverse." and what followed thereunder. (EEOC Brief, pages 27 and 28)

### E. Reply to Appellee's Further Argument

Appellee claims that Appellant asks this Court to ignore precedent and "be the first Court to ever hold that the standard for finding a constructive discharge is a subjective standard, rather than an objective standard." (Appellee's Brief, pages 14-16) This is another example of Appellee's resorting to outright misrepresentation . To the contrary, Appellant's Brief in the pages cited by Appellee (Appellant's Brief, pages 11-13) is devoid of argument for a subjective standard. After misrepresenting Appellant's position, Appellee then explicitly admits that "Indeed Russo herself acknowledges that the applicable standard is an objective one." (Appellee's Brief, page 15) Simply stated, given the disparate facts, it should be up to a jury to determine objectively if what happened to Appellant amounted to constructive discharge.

Appellee relies on *Jones v. SEPTA,* 796 F.3d 323, 326 (3d Cir. 2014) for the proposition that a suspension with pay is not an adverse employment action under the substantive provision of Title VII. However, as already argued by Appellant,

6

and acknowledged by Appellee, the Court qualified that across the board determination with the words "without more". *Jones*, 796 F.3d at 326. Simply stated, Appellant argued that there was "more"; namely the attendant racially adverse circumstances. (Appellant's Brief, page 17)

Appellee next contends that there was no link between Appellant's protected activity and subsequent action to establish a claim for retaliation. Appellee argues that the paid suspension was before her filing her EEOC charge and that her resignation was a year after she filed her EEOC charge. Yet, as noted by the EEOC, Appellant filed her initial EEOC charge in April, 2018, while her conversation with HR Rep Stryker about the ramifications of speaking to a journalist came after that filing. Accordingly, this Court should recognize that Appellant established some protected activity beforehand. Further, as noted by Appellee, temporal proximity is not the only qualifier. Neither is the date of an EEOC charge the polestar for temporal proximity. Rather, the record shows that Appellant continually complained to superiors and to HR. Further, Appellee cites intervening antagonism, retaliatory animus and inconsistencies in employer's articulated reasons as additional alternatives to temporal proximity. Appellant has met these. (Appellant's Brief , page 17) .

As to "hostile environment," Appellee acknowledges the existence of the "continuing violation" doctrine; that acts which are not individually actionable may

be aggregated to make out a hostile work environment. (Appellee's Brief, page 32) Unfortunately, the Court below held that the "continuing violation" doctrine did not apply. Appellant maintains that this doctrine is applicable to this matter and would get Plaintiff beyond any time-barred statements.

Appellee simply dismisses the comment by Ms. Trainer that she was "tired of Black people complaining and acting like victims" as being isolated, off hand and inappropriate (Appellee's Brief, page 36) Then, again playing fast and loose, after stating that this comment was the only statement that was not time-barred, Appellee admits that, in fact, there was other potentially actionable conduct. (Appellee's Brief, page 37) Appellee too easily dismissed these as well. In opposition, Appellant considered these to all come from a racial motivation. This is all evidence of a factual disparity that is for a jury to consider.

Then, there is Appellee's repeatedly asserted objection to the EEOC's and Appellant's contention that Appellant's paid suspension is actionable, or that an unfulfilled threat can constitute a materially adverse job action. Rather, as stated hereinbefore, Appellant and the EEOC have invoked compliance with applicable case law; namely *Burlington Northern & Santa Fe Ry Co., v. White,* 548 U.S. 53 (2006). What is more, the law is not something frozen in place by the doctrine of stare decisis. Over time it is continually subject to revision pursuant to subsequent case history.

8

In characteristic fashion, Appellee claims that " Russo did not raise the issue of whether the alleged threat not to speak to the press constituted an adverse employment action." Then in the very next sentence, it admitted that  Appellant made reference to the alleged threat. (Appellee's Brief, page 44) Nor was  Appellee's Footnote #15 correct in its claim that the EEOC brief admitted that statements such as " things would be bad" are not actionable.  ( See EEOC Brief, pages 27 and 28)

Appellee misrepresents the EEOC's Brief as standing for the proposition that *Jones* is not binding on this Court and that it would be appropriate for this Court to overrule it. (Appellee's Brief, page 41)  The EEOC's Brief  plainly states: " As published precedent, Jones is binding on this Court and thus, for now, would foreclose Russo's discrimination claim if it were premised solely  on the fact of a paid suspension, **'without more.'"**  (emphasis added) (EEOC Brief, page 24)  The EEOC then goes on to say that Appellant's Brief asserted that there, in fact, was "something more"; the qualifier that *Jones* provided.  (EEOC Brief, page 24)  Simply stated, neither the EEOC, nor Appellant is asking this Court to disregard its own holdings and to overrule precedent. In fact, precedent can be honored by this Court's reversal of the Court below by requiring adherence to  *Jones*  and *Burlington.*

## III.    CONCLUSION

Appellant's Brief included the standard that granting summary judgment is an extraordinary remedy which may take place only when there is no genuine dispute as to any material fact. Yet, the facts raised below were hardly so one-sided or implausible as to justify summary judgment. Moreover, as asserted by both the EEOC and Appellant, the decision in *Burlington Northern & Santa Fe Ry. Co., v. White,* 548 U.S. 53 (2006) was clearly not followed by the Court below. Accordingly, this Honorable Court should reverse the decision of the Court below granting summary judgment.

Respectfully submitted,


*/s/: Mark D. Schwartz*
MARK D. SCHWARTZ, ESQUIRE
PA I.D.#30527
P.O. Box 330 24
Bryn Mawr, PA  19010
Telephone No.:  610.525.5534
Email:  markschwartz6814@gmail.com

Dated: June 28, 2023

Counsel for Plaintiff/Appellant
Wandrea Russo

## <u>CERTIFICATION OF ADMISSION TO BAR</u>

I Mark D. Schwartz certify as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*/s/: Mark D. Schwartz*
MARK D. SCHWARTZ, ESQUIRE
PA I.D.#30527
P.O. Box 330 24
Bryn Mawr, PA  19010
Telephone No.:  610.525.5534
Email:  markschwartz6814@gmail.com

Counsel for Plaintiff/Appellant
Wandrea Russo

Dated:  June 28, 2023

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 2,160 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2008 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: June 28, 2023

Respectfully submitted,

*/s/: Mark D. Schwartz*

## CERTIFICATE OF FILING AND SERVICE

I, Noel Reyes, hereby certify pursuant to Fed. R. App. P. 25(d) that, on

June 28, 2023, the foregoing Reply Brief for Plaintiff-Appellant was filed through

the CM/ECF system and served electronically.

Unless otherwise noted, seven copies will be filed with the Court within the time

provided in the Court's rules via Overnight Fed Ex Delivery.


/s/ Noel Reyes
   Noel Reyes